IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BETH ANN HICKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19 cv 4120 |
| | ) | |
| CITY OF CHICAGO BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT**

NOW COMES, the Plaintiff, Beth Ann Hickey, by and through her attorneys, Anthony J. Peraica and Jennifer M. Hill of Anthony J. Peraica & Associates, Ltd., in opposition to Defendant's Motion and Memorandum for Summary Judgment states as follows:

**INTRODUCTION**

Ms. Hickey filed a lawsuit against the Board of Education for the City of Chicago, her former employer, based on age discrimination under the Age Discrimination in Employment Act for termination based upon her age and failure to re-hire based upon her age. Ms. Hickey has also filed claims for reverse-race discrimination for being terminated and not re-hired because she is not Hispanic and does not speak Spanish.

Defendant Board of Education is not entitled to summary judgment. There remain issues of material fact for a jury to decide.

**I.        OBJECTIONS TO DEFENDANT'S RULE 56.1(a)(3) [Docket No. 51].**

Defendant's Rule 56.1 Statement of Material Facts violates Local Rule 56.1(a)(3); it and citations to it in Defendant's motion and memorandum should be disregarded. This Court is entitled to insist on strict compliance with Local Rules designed to promote the clarity of

summary judgment filings. *Stevo v. Frasor*, 662 F. 3d 880, 887 (7th Cir. 2011). It is well-established that "[i]n the Northern District of Illinois, Local Rule 56.1 controls the presentation of evidence at the summary judgment stage." *Flint v. City of Belvidere*, 791 F. 3d 764, 766-767 (7th Cir. 2015) (citation omitted). "the obligation set forth in Local Rule 56.1 is not a mere formality. "The Local Rules are not mere technicalities. Failure to abide by the Local Rules may result in the Court striking briefs, disregarding statements of fact, deeming statements of fact admitted. . . ." *Cracco v. Vitran Exp., Inc.*, 559 F. 3d 625, 632 (7th Cir. 2009).

Defendant's statement of facts violates Local Rule 56.1 as it does not consist of "short numbered paragraphs." See Docket No. 51, paragraphs 3, 7, 13, 14, 40, 43, and 71. Pursuant to Rule 56.1(a)(3), "movants for summary judgment [are] required to submit in support of their summary judgment motion a statement of material facts, comprised of short numbered paragraphs with citations to admissible evidence." *Smith v. Lamz,* 321 F.3d 680, 682 (7th Cir. 2003). Each paragraph "should contain only one or two individual allegations, thereby allowing easy response." *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000).

Statement of material fact does not comply with Rule 56.1 if it fails to adequately cite the record or was filled with irrelevant information, legal arguments, and conjecture. *Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); *System Development Integration, LLC v. Computer Sciences Corp*., 739 F. Supp. 2d 1063, 1068 (N.D. Ill. 2010) ("the purpose of Rule 56.1 statements is to identify the relevant evidence supporting the material facts, not to make factual or legal arguments, and thus the Court will not address the parties' arguments made in their Rule 56.1 statements and responses.") Defendant's statement of fact paragraph 4 fails to cite the record. Plaintiff believes that Defendant's statement of fact paragraphs 3, 7, 8, 10, 13, 14, 27, 29, 30, 37, 42, 43, 47, 51, 62, 65, 66, 71, 73, 74, and 75, contain irrelevant information, legal

arguments and/or conjecture. It is improper to allege legal conclusions in Local Rule 56.1(a) statement on the off-chance that one's opponent may not file a correct response. *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000).

Defendant's paragraph 76 should be stricken because it is hearsay. "Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions . . . are admissible in summary judgment proceedings to establish the truch of what is attested or deposed." *Eisenstadt v. Centel Corp*., 113 F. 3d 738, 742 (7th Cir. 1997).

It is the function of the Court, with or without a motion to strike, to "review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement." *Phillips v. Quality Terminal Services., LLC,* 855 F.Supp.2d 764, 771 (N.D. Ill. 2012); *Ellman v. Woodstock # 200 School District,* 2001 WL 218958, at *1 (N.D.Ill. Feb.26, 2001) (striking portions of 56.1 statements that "contain legal arguments and conclusions").

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Bekker v. Humana Health Plan, Inc.*, 229 F. 3d 662, 669 (7th Cir. 2000). A genuine issue of fact exists only when a reasonable jury could find for the nonmoving party based on the record as a whole. *Bekker v. Humana Health Plan, Inc.*, 229 F. 3d 662, 669 (7th Cir. 2000). The court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility

determinations or weight the evidence. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 120 S. Ct. 2097, 2110 (2000); *EEOC v. Sears Roebuck & Co*., 233 F. 3d 432, 436 (7th Cir. 2000). Courts do not make "credibility determinations nor choose between competing inferences" at the summary judgment stage. *Sarsha v. Sears Roebuck & Co.,* 3 F. 3d 035, 1041 (7th Cir. 1993). Summary judgment cannot be granted if there is a genuine issue of material fact.

The court's sole function in addressing a motion for summary judgment is to determine whether there is a genuine issue of fact that requires trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986)).

## III.     PLAINTIFF'S STATEMENT OF FACTS

Beth Ann Hickey has worked for various schools since 1993 in positions of office support. In 1993, she was a school clerk at Orozco Elementary school, a Chicago Public School. PSOF ¶88. Ms. Hickey resigned from Orozco because of racial harassment by the principal. PSOF ¶88. She then transferred to St. Daniel the Prophet as a school clerk until 1998. PSOF ¶89. Thereafter she became a School Clerk Assistant at John C. Dore Elementary, a Chicago Public School, from 1998 until 2007 and then was promoted to School Clerk I, from 2007 until 2013. PSOF ¶89. In July 2013, Ms. Hickey was laid off by CPS allegedly for budgetary reasons. PSOF ¶89.

Ms. Hickey secured a School Clerk Assistant position at Kelly High School in 2014, where she was employed until being subsequently laid off, for a second time, on August 22, 2017. PSOF ¶90. At Kelly, Ms. Hickey was assigned to not only perform the functions of a school clerk assistant but was also performing registrar functions. PSOF ¶91. Upon her termination, the administrative registrar functions were transferred to a bi-lingual teacher, Ms.

4

Cosme. PSOF ¶91. Although Principal Magdaleno claims that the registrar duties were performed by Magda Sokolowska, she too was a teacher. PSOF ¶91. After the lay-off at Kelly in 2017, those who remained had to pick up additional work. PSOF ¶97.

On August 7, 2017, the Talent Office for the Chicago Public Schools sent Ms. Hickey a termination letter stating that she was being laid off from her position as a School Clerk Assistant at Thomas Kelly High School based on the budgetary process. PSOF ¶5. In 2017, "CPS asked their ODLSS reps and their network people to come in and went school by school and said that they were going to –told schools how many positions they were allowed to have." PSOF ¶92. Kelly High School was told it had to eliminate 25.5 positions, but Principal Magdaleno eliminated 31. PSOF ¶93.

At the Board's hearing on the budget, Ms. Williams-Hayes, a 24-year CPS paraprofessional testified that employees with good evaluations were being terminated. "And unfortunately, many of them have lots of years of service, I know you guys are going after people that have veteran years, you want to get rid of them because that cuts your budget, but it leaves these families without an income." PSOF ¶94.

Shortly after closing positions and laying off 31 employees from Kelly High School, Principal Magdaleno opened up a position for a School Guidance Counselor Assistant. PSOF ¶47. He also opened up Miscellaneous positions to help the laid off parent-worker employees. PSOF ¶98.

Ms. Hickey was born in 1958 a Caucasian female and is over the age of 60. PSOF ¶1. Ms. Hickey was a few years away from retirement, when she was terminated in 2017. She was desperately seeking employment and had reached out to Kelly's Principal Magdaleno, who laid her off, for assistance. PSOF ¶20. He forwarded her resume to two other principals (PSOF ¶20),

but did not interview or consider her for the School Guidance Counselor Assistant position (PSOF ¶85, ¶99-¶100).

Ms. Hickey attempted to secure employment with the Chicago Public School system having applied to over 20 open positions with the Chicago Public School system and positions in Suburban Cook County schools. PSOF ¶86, ¶87. She was turned down for every position for which she applied. PSOF ¶6, ¶86, ¶87. None of the positions required bi-lingual skills but it was part of each inquiry. PSOF ¶101. Ms. Hickey eventually obtained a job in October 2018 with Stagg High School. Ex. A, p. 244:13-14; p. 251:13-252:8.

## IV.    ARGUMENT

### A.  Age Discrimination Under ADEA

The ADEA prohibits employment discrimination against people over 40 years old. 29 U.S.C. §§623(a)(1), 631(a). A claim under the ADEA is successful if the plaintiff can show that her "termination or other adverse employment action would not have occurred 'but for' her employer's motive to discriminate on the basis of her age." *Fuka v. Thomson Consumer Electronics,* 82 F.3d 1397, 1402 (7th Cir.1996); *Horwitz v. Board of Education of Avoca School District No. 37,* 260 F.3d 602, 610 (7th Cir.2001); *Baron v. City of Highland Park,* 195 F.3d 333, 338 (7th Cir.1999).

To establish an ADEA violation, Hickey must be able to demonstrate that she suffered a materially adverse change in the terms or conditions of her employment *because of her age. Crady v. Liberty National Bank and Trust Co. of Indiana,* 993 F. 2d 132, 134 (7th Cir. 1993); *Spring v. Sheboygan Area School Dist.,* 865 F.2d 883, 885 (7th Cir.1989). She may do so under either the direct method set out in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S. Ct. 1775, 1794–958 (1989), or the indirect burden-shifting method described in *McDonnell Douglas*

*Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973), *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S. Ct. 1089, 1093–94 (1981) and *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S. Ct. 1701, 1708 (1993).

To establish a prima facie case of discriminatory discharge under the indirect method of proof, Hickey must show that: 1) she was more than forty years old; 2) she performed her job satisfactorily; 3) she was discharged (either actually or constructively); and 4) the discharge occurred under circumstances which gave rise to an inference of age discrimination. *Stetson v. NYNEX Service Co.,* 995 F.2d 355, 359–60 (2d Cir.1993). *See also Crady v. Liberty National Bank and Trust Co. of Indiana,* 993 F. 2d 132, 134 (7th Cir. 1993); *Konowitz v. Schnadig Corp.,* 965 F.2d 230, 232 (7th Cir.1992).

However, this method has been called into question by the Seventh Circuit in favor of a more straightforward method. In *Ortiz v. Werner Enterprises Inc.*, 834 F. 3d 760, 765-766 (7th Cir. 2006), the Seventh Circuit overrode the separation of direct and indirect methods, but maintained the burden-shifting set forth in *McDonnell Douglas*. "[A]ll evidence belongs in a single pile and must be evaluated as a whole." *Id* at 766. The Seventh Circuit has proposed that the court make the following inquiry: "is the plaintiff in a class protected by the statute; has [s]he suffered a harm; and could a rational jury find the latter resulted from the former." *Shreeve v. D.O. McComb & Sons, Inc.,*2013 WL 5707196, *5 (N.D. Ind. Oct.21, 2013) (citing *Hitchcock*, 718 F.3d at 737 (7th Cir.2013) (citing *Coleman,* 667 F.3d at 863 (7th Cir.2012) (Wood, J., concurring)).

The parties are in agreement that Beth Hickey is over the age of 40 (PSOF ¶1) and therefore is in a class protected by the Age Discrimination in Employment Act. The parties are

also in agreement that Ms. Hickey employment with the Board of Education for the City of Chicago ended on August 22, 2017 (PSOF ¶5).

Plaintiff does not think Beth Hickey's job performance is an issue. Ms. Hickey had received outstanding job reviews during her CPS employment. PSOF ¶95. Furthermore, Principal Magdaleno praised Ms. Hickey to his colleagues. PSOF ¶¶20-21. And he considered her a "really good employee here at Kelly." PSOF ¶21.

The issue that remains is whether the lay-off of Ms. Hickey on August 22, 2017 was a result of her age. Under the Seventh Circuit's criteria, whether Ms. Hickey's lay-off was a result of her age is a question for "a rational jury". Therefore, summary judgment should be denied.

A jury should be allowed to determine whether Beth Hickey's age was instrumental in her lay-off by the Defendant. Ms. Williams-Hayes, a 24-year CPS paraprofessional testified that employees with good evaluations were being terminated. "And unfortunately, many of them have lots of years of service, I know you guys are going after people that have veteran years, you want to get rid of them because that cuts your budget, but it leaves these families without an income." PSOF ¶94. The longer an employee works for a district the higher step level they obtain and the more money they make. PSOF ¶96. Employees age as they gain years of service. PSOF ¶96.

If the employer offers a pretext—a phony reason—for why it fired the employee, then the trier of fact is permitted, although not compelled, to infer that the real reason was age. *Shager v. Upjohn Co., supra,* 913 F.2d at 401. This is just the test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), transposed to the age discrimination setting. *Visser v. Packer Engineering Associates, Inc*., 924 F. 2d 655, 657 (1991).

Principal Magdaleno did not have a rational basis for eliminating Ms. Hickey's position. He eliminated 31 positions at Kelly High School, including office personnel and non-core teaching positions. PSOF ¶12. That was 5.5 more positions than required. PSOF ¶93. In addition, Magdaleno stated his focus was student centered, but he eliminated the students' supplies and busing. PSOF ¶9-¶10. However, during the balancing of the budget Magdaleno did not consider reducing the number of Assistant Principals that were at Kelly High School.

"I wanted to ensure that my teachers were getting the support that they needed and the coaching that they needed and the coaching that they asked for in order for them to become better instructors, therefore having a greater impact on the educational needs of our students. In addition to that, we had to pick up some of the work that was left behind based on the budget cuts. So people just picked up additional responsibility. But the primary goal was for us to support our students by supporting and mentoring 130-something, 140-something teachers." PSOF ¶97. The cost for the 4 Assistant Principals was $427,664 (so approximately $106,916 each), while a School Clerk Assistant was only $44,744. PSOF ¶97.

If support for the students and faculty were Principal Magdaleno's goal, it would make more sense to eliminate one or two assistant principals and keep more supportive positions such as office staff, including the Plaintiff, and non-core teachers! After all, Magdaleno after closing all of the lowest position, parent-worker, to balance the budget, he then opened miscellaneous positions to try to help those laid off employees out. PSOF ¶98.

Age discrimination towards Ms. Hickey is also present in the failure of Principal Magdaleno to re-hire her. Magdaleno testified that he opened a position at Kelly based upon what he could afford in the budget. PSOF ¶99. He had to pick an individual that would have a lower step because step is based upon years of experience; the more years of service the more the

employee costs. PSOF ¶96. He chose Ms. Balczar, and not Ms. Hickey, because she was newer

to the district and her salary would be less. PSOF ¶50, ¶99. Ms. Hickey was not even allowed an

interview for the position, despite applying for it. PSOF ¶100. Ms. Balczar is more than 20

years younger than Ms. Hickey. PSOF ¶53.

As discussed above, there are issues of material fact as to whether Ms. Hickey was

discriminated in her employment based on her age by the Defendant, through its agent Principal

Magdaleno. For these reasons, Defendant's motion for summary judgment should be denied and

this matter set for trial.

**B. Reverse-Race Discrimination of the Plaintiff**

Plaintiff has asserted the Defendant discriminated against her because she is a member of

a majority group, namely, Caucasian. As with all employment discrimination cases, the ultimate

issue is whether evidence permits "a reasonable factfinder to conclude that the plaintiff's race,

ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse

employment action." *Tyburski v. City of Chicago,* 964 F.3d 590, 598 (7th Cir. 2020)(citation

omitted). A plaintiff may carry this burden under the *McDonnell Douglas* burden-shifting

method or by adducing evidence, that, considered as a whole, allows a reasonable factfinder to

conclude that the proscribed factor caused his termination. *McDaniel v. Progress Rail*

*Locomotive, Inc.,* 940 F.3d 360, 368 (7th Cir. 2019).

Defendant argues that plaintiff fails under the *McDonnell Douglas* burden-shifting

method. To survive summary judgment under this method of proof, for reverse discrimination

claims, plaintiff must present evidence creating a genuine issue of material fact: (1) that the

Chicago Board of Education has an inclination to discriminate against Caucasians or evidence

that there is something "fishy" about the facts at hand; (2) she was meeting the Board of

Education's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) the Board of Education treated her less favorably than similarly situated individuals. *Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) (citation omitted). If plaintiff establishes these four factors, the burden shifts to the Defendant to provide a legitimate, non-discriminatory reason for terminating her employment. *See id.*; *Purtue v. Wisconsin Dep't of Corr.,* 963 F.3d 598, 602 (7th Cir. 2020). If the Board of Education meets its burden, the burden shifts back to the plaintiff to establish that the CBOE's reason for her termination or failure to re-hire was pretext for discrimination. *Purtue*, 963 F.3d at 602.

The burden of establishing a prima facie case is not onerous. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The Seventh Circuit has held that the elements of the prima facie case were never intended to be rigidly applied. *Pilditch v. Board of Education of City of Chicago,* 3 F.3d 1113, 1116 (7th Cir.1993) (citing *McDonnell–Douglas, Inc.,* 411 U.S. at 802 n. 13), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1065 (1994).

The parties are in agreement that Beth Hickey is Caucasian. PSOF ¶1. The parties are also in agreement that Ms. Hickey employment with the Board of Education for the City of Chicago ended on August 22, 2017 (PSOF ¶5). Plaintiff not only was terminated from her employment but she was also not re-hired. PSOF ¶6. Failure to hire or re-hire is an adverse employment action. See *Baines v. Walgreen Co*., 863 F. 3d 656, 661 (2017); *Chatman v. Board of Education of City of Chicago*, 2020 WL 5110380, *8 (N.D. Ill. Aug. 31, 2020). Plaintiff obtained employment at Stagg High School in October 2018. Ex. A, p. 244:13-14; p. 251:13-252:8.

Plaintiff does not think Beth Hickey's job performance is an issue. Ms. Hickey had received outstanding job reviews during her CPS employment. PSOF ¶95. Furthermore,

Principal Magdaleno praised Ms. Hickey to his colleagues. PSOF ¶¶20-21. And he considered her a "really good employee here at Kelly." PSOF ¶21. In the event that it is in dispute, Plaintiff argues that "The employer may disagree, as it maintains it fired plaintiff for just cause. However, this element of the *prima facie* case may be established by plaintiff's testimony alone." *Veatch v. Northwestern Memorial Hospital*, 730 F. Supp. 809, 817 fn. 11 (N.D. Ill. 1990). *See Williams v. Williams Electronics, Inc.,* 856 F.2d 920, 923 n. 6 (7th Cir.1988) ("A determination that an individual is performing a job well enough to meet an employer's legitimate expectations, when made in the context of a *prima facie* case, may be based solely upon the employee's testimony concerning the quality of his work"). *See also Weihaupt v. American Medical Association,* 874 F.2d 419, 428 (7th Cir.1989).

The issues that should be left for a jury to decide are: (1) whether the Defendant has an inclination to discrimination against Caucasians or things are "fishy", (2) whether Ms. Hickey was treated less favorability than similarly situated people, and (3) whether there is pretext for the discrimination.

**1. Defendant, Through Its Decision Makers, Had An Inclination To Discriminate Against Caucasians.**

There is direct evidence that the Board of Education for the City of Chicago discriminates against Caucasians. First, there is a mandate in Illinois that "any school enrolling more than 20 EL students who speak the same language must offer a bilingual education program." PSOF ¶109. Second, "bilingual are preferred per se because that is the population we need to serve." PSOF ¶102. Kelly's student demographics were 80% Latino, 12-14% Asian, 6-8% other. Ex. B, p. 33. Plaintiff was asked at each of her interviews after the layoff whether she spoke Spanish. PSOF ¶101. Although the Defendant states that being bilingual was not a requirement for any of the positions, Defendant and its counsel emphasize the need for Hispanic personnel and Spanish-

speakers because of school demographics. Ex. A, p. 39-41. However, it is suspect that Ms. Hickey with glowing recommendations and 18 years of experience in schools, was only able to get 4 interviews and no job with the Chicago Public Schools. Ex. A, p. 204:10-16. Individuals with Hispanic surnames and bilingual were hired instead.

There are other factors that go to reverse-race discrimination raised in this case. All of the individuals at Kelly High School involved in the budget decision process were Hispanic. Ex. A, p. 212:1-18. Magdaleno made a point of telling his colleagues that Ms. Hickey was not bilingual. PSOF ¶20. Magdaleno also was active in promoting Hispanics in the community.

**2. Beth Hickey Was Treated Less Favorability Than Other Laid-Off Employees.**

Beth Hickey was subject to discrimination that other laid off employees did not face. Lower paying employees were offered positions at Kelly High School, even though she had applied and had more years of service with the Chicago Public Schools. PSOF ¶47, ¶50, ¶52, ¶85, ¶98-¶100. Plaintiff lack of knowledge of Spanish was treated as a negative when other candidates for a position had that skill. In addition, for each of the positions that Ms. Hickey had an interview for (PSOF ¶5, ¶22, ¶34, ¶56, ¶67), the job had gone to someone already familiar with the school and known to the hiring principal.

**3. The Board Of Education Does Not Protect Employees Against Discrimination In Their Work Place.**

The Defendant is the Board of Education for the City of Chicago. The BOE is responsible for the governance and oversight of Chicago Public Schools. PSOF ¶103. It is tasked with "establishing policies, standards, goals and initiatives to ensure accountability and provide a world-class education that prepares our students for success in college and career." PSOF ¶103.

The Board is required by the Illinois School Code to adopt an annual school budget for each fiscal year no later than 60 days after the beginning of the fiscal year. Ex. 8. The Chicago

Public Schools' fiscal year starts July 1 and ends the following June 20. Ex. 8. The Board was to act on the FY18 Proposed Budget at their meeting on August 28, 2017. Ex. 8.

Ms. Hickey, in her position of School Clerk Assistant, was laid-off prior to the approval of the budget! She was advised on August 7, 2017 (Exhibit L), that her position is no longer available and it was effective August 22, 2017. PSOF ¶5. Interestingly, the following school year, 2018-2019, Kelly High School budget allowed for 2 School Clerk Assistants but the position was never opened by Principal Magdaleno. Ex. 2. The Board directs the Principals of each individual Chicago Public School to make budgetary decisions for that school without any formal guidelines as to reductions. Furthermore, there is no assistance or consistency in hiring because it is left up to the principal of the school and not structured by the Chicago Board of Education or its HR department. PSOF ¶107.

Defendant in its collective bargaining agreement does prohibit discrimination. The Board sets forth a Prohibition on Discrimination in the CBA, Section 2-1, "No employee shall be discriminated or retaliated against on the basis of race, creed, color, age, sex, national origin, marital status, disability or sexual orientation; the utilization of benefits authorized by this Agreement or BOARD policy; . . ." PSOF ¶104. Interestingly, the next section discredits the prohibition. The Board implemented and promotes a Recruiting Plan, in CBA Section 2-2, that emphasizes "racially diverse pool of candidates to fill positions" and training of "principals and head administrators regarding the implementation of the BOARD's plan". PSOF ¶104.

As discussed above, there are issues of material fact as to whether Ms. Hickey was discriminated in her employment based on her race, Caucasian, and inability to speak Spanish. "Employment discrimination cases often center on parties' intent and credibility, which must go to a jury unless no rational factfinder could draw the contrary inference." *See Darchak v. Chi.*

*Bd. of Educ.,* 580 F.3d 622, 632–33 (7th Cir.2009). For these reasons, Defendant's motion for summary judgment should be denied and this matter set for trial.

## CONCLUSION

The court's sole function in addressing a motion for summary judgment is to determine whether there is a genuine issue of fact that requires trial. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986)). Plaintiff has set forth genuine issues of material fact that require a trial by jury.

For the reasons set forth in Plaintiff's Response, Memorandum in Opposition and Local Rule 56.1(b), Plaintiff Beth Ann Hickey respectfully requests that this Honorable Court partially strike Defendant's Local Rule 56.1(a) Statement of Facts, deny Defendant's Motion for Summary Judgment, set this matter for trial, and for such other and further relief as this Court deems just and right.

Respectfully Submitted,

Beth Ann Hickey

s/ Anthony J. Peraica

s/ Jennifer M. Hill

Anthony J. Peraica, #6186661
Jennifer M. Hill, #6284880
Anthony J. Peraica & Associates, Ltd.
5130 S. Archer Avenue
Chicago, IL 60632
(773) 735-1700
support@peraica.com

## Certificate of Service

The undersigned, an attorney, hereby certifies that on September 30, 2020, a copy of the foregoing was served by CM/ECF, the Court's electronic filing system, upon the party of record.

s/ Anthony J. Peraica