IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BETH ANN HICKEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19 C 4120 |
| ) | |
| CITY OF CHICAGO BOARD OF ) | |
| EDUCATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Beth Ann Hickey has sued her former employer, the Board of Education of the City of Chicago, for employment discrimination. She alleges that the Board laid her off and did not rehire her for positions she applied to and was qualified for because of her age and race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a). The Board has moved for summary judgment. For the reasons set forth below, the Court grants the motion.

## Background

The following facts are undisputed except where otherwise noted. The Board is a local government entity that operates the Chicago Public School (CPS) system. Hickey is a former employee. She began her employment with the Board in 1998 at John C. Dore Elementary School, where she worked as a school clerk. At the time she filed this lawsuit against the Board, she was 60 years old. Hickey is white.

**A.     2013 layoff**

On July 19, 2013, Hickey received notice of her upcoming layoff.  In an official letter to Hickey, Dore's principal stated that the layoff was effective August 9, 2013 and was due to CPS budget cuts.  Hickey contends that she was the only CPS employee at Dore who was laid off.  Further, she says that one month after she was laid off, Dore hired someone else as a school clerk assistant—a lower position—to perform duties Hickey previously performed.

**B.     2017 layoff**

In 2014, after being unable to find a comparable position as a school clerk, Hickey accepted a lower position as one of two school clerk assistants at Thomas Kelly High School.  On August 7, 2017, she received a layoff letter from Kelly's principal, Raul Magdaleno.  Hickey's layoff became effective August 22, 2017 and was attributed to budgetary concerns.  Hickey contends that Hispanic administrators and teachers at Kelly conspired to remove her.  The Board disputes Hickey's argument and points out that a Hispanic school clerk was also laid off and other white employees over the age of 40 were retained.  For example, Paulette Khateeb, the other of two school clerk assistants at Kelly, was retained; she was 55 years old at the time of Hickey's layoff.  Karen McDonough, a white woman over the age of 40 who worked a school clerk at Kelly was also retained.

The Board says that Magdaleno eliminated Hickey's position and thirty others to minimize the impact of a $2 million budgetary shortfall.  The Board also argues that Hickey's layoff was consistent with the mandatory layoff procedures in the Collective Bargaining Agreement (CBA), which provides that bargaining unit employees should be

laid off based on seniority. The Board explains that Hickey was laid off because she had less seniority than the other school clerk assistant, Paulette Khateeb. According to the Board, Hickey's position at Kelly was never reopened. Hickey disputes this; she says that Kelly's budget for the 2018-19 school year allowed for two school clerk assistants. *See* Pl.'s Ex. 2, Kelly FY 2019 Approved Positions (dkt. no. 54-1). Hickey admits, however, that Magdaleno never opened the second school clerk assistant position. Pl.'s Resp. Mem. at 14 (dkt. no. 55).

**C.** **Hickey's subsequent job applications and interviews**

During her employment with the Board, Hickey says she received satisfactory, outstanding, and excellent evaluations. After Hickey was laid off, Magdaleno, Kelly's principal, forwarded Hickey's resume to other CPS principals via e-mail and expressed his willingness to vouch for her performance capabilities. In that e-mail, he also mentioned that Hickey is not bilingual. During his deposition, Magdaleno testified that he made Hickey's bilingual status clear because other principals "serve the same population [Kelly] serve[s]." Def.'s Ex. B, Magdaleno Dep. 62:3-6 (dkt. no. 52-2). "Based on the needs of our students with diverse needs," there are some positions specifically designated as bilingual. *Id.* at 59:7-19.

Since being laid off from Kelly, Hickey has been unable to obtain a job with the Board. She contends she applied to at least twenty-three positions for which she was qualified. Hickey also applied to another job at Kelly, but because of limited funds, Magdaleno hired another person—a white woman—whose CBA-required salary was $20,000 less than Hickey's mandatory starting compensation. Hickey says that for at least nine other jobs to which she applied, the Board hired Hispanic individuals who

3

were younger than her.

Hickey was denied nineteen jobs without an interview. She interviewed for four jobs: school library assistant at Curie High School, special education classroom assistant (SECA) at Adlai E. Stevenson High School, school clerk assistant at James Shields Middle School, and school clerk assistant at John F. Kennedy High School. Hickey contends that during each interview, the interviewer asked if she spoke Spanish, which was not in any of the job descriptions. Hickey contends that she was not hired because she is not Hispanic and does not speak Spanish.

The Board disputes Hickey's contentions. It says that the principals at each school did not hire her for legitimate reasons—Hickey was either unqualified for the position or was not the most qualified candidate based on neutral criteria. For instance, Curie's principal, Allison Tingwall, says she denied Hickey the school library assistant job because it required an associate's degree, which Hickey does not have. Hickey also scored lower than at least two other applicants based on a neutral interview rubric, and Tingwall hired the highest-scoring candidate. Likewise, Stevenson's principal, Paul O'Toole, testified that did not hire Hickey for the SECA position because she lacked experience working with disabled students and did not express genuine interest in working as a SECA. O'Toole hired another applicant who conveyed a dedication to students with special needs, had recent experience as a SECA, and had other relevant experience as a certified nurse assistant.

Next, Shields's principal, Debra Fritz-Fanning, interviewed Hickey for a school clerk assistant position, but did not hire Hickey based on what she characterized as self-centered interview answers. Def.'s Ex. E, Fritz-Fanning Dep. 79:12-81:14 (dkt. no. 52-

4

5). Specifically, the principal concluded that Hickey was not dedicated to putting students first. *Id*. Finally, George Szkapiak, Kennedy's principal, did not hire Hickey for the school clerk assistant position because another applicant had twenty-two years of relevant experience, glowing letters of recommendation, and excelled in the interview.

Hickey, who is white and over the age of 40, filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR). She filed this lawsuit in June 2019, within ninety days of receiving her right-to-sue letter. As indicated earlier, Hickey asserts two claims against the Board: age discrimination under the ADEA (count 1) and race discrimination under Title VII (count 2).

## Discussion

The Board has moved for summary judgment on Hickey's discrimination claims. To prevail on its motion, it must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cty. Sheriff's Dep't.*, 602 F.3d 845, 849 (7th Cir. 2010) (quotation marks omitted). The Court views the evidence and draws all inferences in favor of the nonmoving party. *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). Hickey must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment

5

must be granted to the moving party." *Cervantes*, 914 F.3d at 564.

In count 1 of the amended complaint, Hickey alleges that the Board unlawfully passed her over for employment and denied rehiring her because of her age, in violation of the ADEA. 29 U.S.C. § 623(a). "The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). To prevail on a theory of disparate treatment in the ADEA context, "it's not enough to show that age was *a* motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Id.* (quotation marks omitted). In count 2, Hickey contends that the Board violated Title VII by depriving her of employment opportunities because of her race and inability to speak Spanish. 42 U.S.C. § 2000e-2(a).

The parties argue that statements of facts submitted by the other did not comport with Local Rule 56.1 because some of the factual statements improperly contained arguments or were otherwise unsupported by the cited evidence. The Court takes note of these concerns and relies on the underlying record.

Courts apply the same "analytical framework" for Title VII and ADEA claims, so the Court considers Hickey's claims together. *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009). Specifically, the Court must determine if Hickey can survive summary judgment on her employment discrimination claims based on the *McDonnell Douglas* burden-shifting test and the *Ortiz* reasonable factfinder framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

First, the Court analyzes whether Hickey has established a *prima facie* case of

6

discrimination under the *McDonnell Douglas* test. Next, per *Ortiz*, the Court "assess[es] cumulatively all of the evidence" Hickey presented to determine whether "a reasonable factfinder [could] conclude that the plaintiff's race . . . or other proscribed factor caused the discharge or adverse employment action." *Ortiz*, 834 F.3d at 765. "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.*; *see David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) (applying the *McDonnell Douglas* test first and then reviewing all of the evidence based on *Ortiz*); *see also Gonzalez v. Tape Case Ltd.*, No. 17 C 2011, 2018 WL 3574754, at *2 (N.D. Ill. July 25, 2018) (Kennelly, J.) (same).

A. *McDonnell Douglas* **framework**

Under the *McDonnell Douglas* framework, to establish a *prima facie* case of discrimination, Hickey must show that: (1) she is a member of a protected class; (2) her job performance met the Board's legitimate expectations; (3) she suffered an adverse employment action; and (4) the Board treated another similarly situated employee who was not in the protected class more favorably. *Khowaja v. Sessions*, 893 F.3d 1010, 1014-15 (7th Cir. 2018). "If the plaintiff establishes these elements, the burden shifts to the defendant to articulate legitimate, nondiscriminatory reasons for its employment action." *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). "Should the defendant meet its burden, the plaintiff then must cast doubt on whether these reasons are credible, or whether they are merely pretext." *Id.*

Because Hickey is white, she is not a member of a protected class and "clearly does not satisfy prong one." *Id.* Accordingly, this is a "reverse discrimination" case, for

which the Seventh Circuit has articulated a modified version of the *McDonnell Douglas* framework regarding the first element. *See id.* at 454-55. Instead of showing that she is a member of a protected class, Hickey must demonstrate that there are "background circumstances" that "support an inference that [the Board] is one of those unusual employers who discriminates against the majority." *Id.* at 455 (quotation marks omitted).

The parties do not dispute that Hickey—who was 60 years old at the time she filed this lawsuit against the Board—is old enough to be protected under the ADEA. The parties also do not appear to dispute that she experienced an adverse employment action: she was laid off and not rehired. There is also no dispute that Hickey met the Board's performance expectations. Accordingly, the two *prima facie* elements in dispute are whether (1) she was treated less favorably than similarly situated employees outside of her protected class and (2) there is evidence of background circumstances to support an inference of reverse race discrimination. Def.'s Opening Mem. at 7-8; *see Bischoff v. Thornton Twp.*, No. 19 C 4094, 2021 WL 1172263, at *5-6 (N.D. Ill. Mar. 27, 2021). As explained below, the Court concludes that Hickey cannot make out a *prima facie* case of discrimination because she has not offered any evidence from which a reasonable jury could find that a similarly situated employee outside her protected classes was treated more favorably. *Gonzalez*, 2018 WL 3574574, at *2.

"An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them." *Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 629

8

(7th Cir. 2018) (quotation marks omitted and alterations accepted). The Seventh Circuit has stated that "[d]etermining whether other employees are similarly situated requires a flexible, common-sense examination of all relevant factors." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 927 (7th Cir. 2019) (quotation marks omitted); *see Johnson Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 895 (7th Cir. 2018) ("the [Seventh Circuit] warn[s] against using a mechanical magic formula for the similarly-situated inquiry . . . .") (quotations omitted). The "purpose" of the "similarly-situated analysis" is to "eliminate other possible explanatory variables, 'such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable'—discriminatory animus." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)).

Hickey contends she was treated less favorably than similarly situated employees because she was "subject to discrimination that other laid off employees did not face." Pl.'s Resp. Mem. at 13. Regarding her age discrimination claim, Hickey points out that "[l]ower paying employees were offered positions at Kelly High School, even though she had applied and had more years of service with [CPS]." *Id.* Next, regarding race discrimination, she contends that her "lack of knowledge of Spanish was treated as a negative when other candidates for a position had that skill." *Id.* Finally, she contends that "for each of the positions" for which she interviewed, "the job had gone to someone already familiar with the school and known to the hiring principal." *Id.*

Hickey has not offered evidence that would permit a jury to find there were similarly situated younger or non-white employees whom the Board treated more

9

favorably. Her "broad conclusions" and "uncorroborated generalities" are insufficient to carry this burden. *Zayas v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1158 (7th Cir. 2014). Furthermore, the Board produced evidence to refute Hickey's claim that her inability to speak Spanish was the reason why it did not rehire her. The Board contends that it did not hire Hickey for positions to which she applied because she did not meet job qualifications, such as education requirements or relevant experience, or because other job applicants either scored better than Hickey based on neutral criteria or were otherwise more qualified than her. *Id.* at 3. The Board's assertions are supported by the record.

     No reasonable jury could find otherwise. Hickey has not pointed to any evidence that contradicts the Board's contentions. She has pointed to no evidence that would permit a reasonable jury to find that the Board treated her differently from other similarly situated younger or non-white laid off employees of the Board. Accordingly, without a *prima facie* case, Hickey's claims of age and race discrimination cannot survive summary judgment under the *McDonnell Douglas* framework. Moreover, even if Hickey had established a *prima facie* case based on *McDonnell Douglas*, the Board would still be entitled to summary judgment because of multiple legitimate, nondiscriminatory reasons for laying off Hickey and declining to rehire her. All of the Board's decisions regarding Hickey's employment were attributable to budget cuts, mandatory CBA procedures, Hickey's lack of qualifications, and the existence of applicants who were more qualified than Hickey.

**B.** ***Ortiz* analysis**

     In addressing the case under the *Ortiz* totality-of-the-evidence approach, the

Court considers all of the evidence Hickey relies upon to oppose the Board's motion for summary judgment. For example, Hickey argues that during a public hearing on CPS's annual budget, a CPS paraprofessional accused the Board of terminating "veteran" employees with good evaluations because employees with less experience are entitled to less pay. Pl.'s Resp. Mem. at 5; see Pl.'s Ex. 13, CPS Budget Hearing, at 42-43 (dkt. no. 54-3). Hickey notes that "[e]mployees age as they gain years of service" and "[t]he longer an employee works for a district . . . the more money they make." Pl.'s Resp. Mem. at 8. Thus, Hickey contends, the Board's alleged practice of terminating employees with more years of service is evidence that the Board discriminated against her because of her age. *Id.* at 8.

Hickey's argument lacks merit. First, the transcript from the CPS budget hearing is not evidence that would support a contention that Kelly's principal, Magdaleno, or any other personnel from the Board discriminated against Hickey. In particular, there is nothing to indicate that the paraprofessional's speculative comments during the hearing bear any relation to actions the Board took regarding Hickey's employment. Def.'s Opening Mem. at 4; see *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 781-82 (7th Cir. 2007) ("stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment") (quotations omitted). Moreover, "statements of a person who lacks the final decision-making authority may be probative of intentional discrimination, but only if that individual exercised a significant degree of influence over the contested decision." *Nichols*, 510 F.3d at 782 (quotations omitted). And even if the Court were to consider Hickey's argument, it is not persuasive. As the Board argues, it is permissible for employers to make decisions that "reduce labor

11

costs"—even if a decision adversely affects older workers—because financial considerations are "a reasonable factor other than age." *See O'Brien v. Caterpillar, Inc.*, 900 F.3d 923, 930 (7th Cir. 2018); Def.'s Opening Mem. at 6.

Hickey also argues that there is evidence that the Board "discriminates against Caucasians" via a preference for bilingual people. Pl.'s Resp. Mem. at 12. Specifically, she argues that Magdaleno, Kelly's principal, "made a point of telling his colleagues that Ms. Hickey is not bilingual" and that he "was active in promoting Hispanics in the community." *Id.* at 13. She also asserts that "[a]ll of the individuals at Kelly . . . involved in the budget decision process were Hispanic." *Id*. Hickey also contends that although none of the twenty-three positions to which she applied required bilingual skills, this "was part of each inquiry" when she interviewed for four of them. *Id.* at 6; *see also* Def.'s Ex. A, Hickey Dep. 99:14-99:20 (dkt. no. 52-1) ("All four of them during the interview asked me if I spoke Spanish, when that was not a requirement on any of the postings."). The Board contends that no interviewer asked Hickey whether she spoke Spanish during her job interviews and challenges Hickey's reliance on her own deposition transcript as the only evidence of this fact. Def.'s Resp. to Pl.'s Stat. of Facts ¶ 101 (dkt. no. 57) ("the cited material does not show CPS 'administrators' asked her whether she spoke Spanish . . . .").

Evidence that the Board prefers Spanish-bilingual people for positions that do not require bilingual skills could indicate a preference for Hispanic applicants and thus evidence of discrimination against non-Hispanic applicants. In response to Hickey's contentions, the Board acknowledges that Magdaleno testified during his deposition that "[Spanish-bilingual applicants are] preferred per se simply because of the population

[Kelly] need[s] to serve," Magdaleno Dep. 60:3-7, but argues that his testimony was "speculation" and it alone is not evidence that *the Board* has this preference. Def.'s Reply at 7 (dkt. no. 56). Further, the Board points out that Magdaleno also testified that he has never turned someone down for employment because they were not bilingual; Hickey has offered no contrary evidence. *Id.*; *see* Magdaleno Dep. 60:8-10. The Court overrules Hickey's arguments. Her argument would require a factfinder to infer from a single CPS principal's testimony that the Board discriminates against non-Hispanic job applicants by using the Spanish language as a proxy for race discrimination. That is far too big a leap to be considered a reasonable inference. Moreover, "all evidence belongs in a single pile and must be evaluated as a whole." *Ortiz*, 834 F.3d at 766. In assessing all of the evidence—including Magdaleno's praise of Hickey's performance to assist her in her job search, the Board's reliance on neutral hiring criteria for the jobs to which Hickey applied, and the Board's numerous proffered reasons for rejecting Hickey's applications—Hickey's contentions on this point are not sufficient to fend off the Board's motion for summary judgment.

In sum, Hickey cannot point to any evidence from which a reasonable jury could conclude that the Board laid Hickey off and did not rehire her because she is white and does not speak Spanish. Thus, no reasonable jury could find that the Board's decisions regarding Hickey's employment were because of age or race discrimination. *See, e.g.*, Def.'s Ex. C, Tingwall Dep. 71:18-74:20 (dkt. no. 52-3) (explaining that Hickey was not hired for the library assistant job because she was unqualified); Def.'s Ex. D, O'Toole Dep. 61:9-63:10 (dkt. no. 52-4) (explaining why Hickey was not qualified for the SECA position); Def.'s Ex. N, CBA, at 48-49 (dkt. no. 52-14) (explaining role of seniority in

13

CBA layoff policy).

Even if one were to consider Hickey's contention sufficient to permit a reasonable inference that the Board laid her off and did not rehire her because of her inability to speak Spanish, the Board has articulated a nondiscriminatory reason for preferring Spanish-bilingual applicants—the unique needs of the population Kelly serves. Def.'s Reply at 7-8; *Lauer v. City of Chicago Bd. of Educ.*, No. 06 C 6165, 07 C 196, 2008 WL 1817242, at *3 (N.D. Ill. Apr. 21, 2008) (holding that "the need to communicate with the students, parents, and school community that do not speak English" is a "nondiscriminatory reason" for bilingual hiring preference); *see also Armstrong v. Chicago Park Dist.*, 693 F. Supp. 675, 684 (N.D. Ill. 1988), *aff'd*, 886 F.2d 332 (7th Cir. 1989) (holding that the district's decision to promote one employee over another "because he was bilingual and the vacancy was . . . in an Hispanic neighborhood" is "certainly a legitimate nondiscriminatory reason for its decision").

The Court concludes that the evidence, when considered in the light most favorable to Hickey, would not permit a reasonable jury to find that the Board discriminated against her because of her age or race. The Board is entitled to summary judgment on both counts of her amended complaint.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment [dkt. no. 49] and directs the Clerk to enter judgment in favor of the defendant.

                                                                                             _____
                                                                                    MATTHEW F. KENNELLY
                                                                                    United States District Judge

Date: April 13, 2021